IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Ryan H Karmann and<br>　　　Michelle L. Karmann<br>　　　Debtors, | BANKRUPTCY CASE NUMBER<br>19-23561 - GLT |
| Nationstar Mortgage LLC as servicer for<br>Lakeview Loan Servicing, LLC<br>　　　Movant.<br>v. | CHAPTER 13<br><br>11 U.S.C. § 362<br><br>Objections due by: **October 24, 2022** |
| Ryan H. Karmann and Michelle L. Karmann<br>　　　Debtors/Respondents, | Docket #: _____ |
| Ronda J. Winnecour, Trustee<br>　　　Additional Respondent. | Related to Doc # _____ |

**MOTION OF NATIONSTAR MORTGAGE LLC AS SERVICER FOR LAKEVIEW
LOAN SERVICING, LLC FOR RELIEF FROM THE AUTOMATIC STAY UNDER
SECTION §362 (d)**

Secured Creditor, Nationstar Mortgage LLC as servicer for Lakeview Loan Servicing, LLC ("Movant"), by and through its undersigned counsel, pursuant to 11 U.S.C. §362, hereby seeks relief from the automatic stay to exercise and enforce its rights, without limitation, with respect to certain real property.  In support of this motion, Movant avers as follows:

1.　　Debtor named above filed a Voluntary Petition under Chapter 13 of the United States Bankruptcy Code in the Western District of Pennsylvania under the above case number.

2.　　Movant is the holder of a secured claim against Debtors, secured only by a first mortgage lien on real estate which is the principal residence of Debtors located at 107 Wylie Ave, Houston, PA 15342 (the "Mortgaged Premises").

3.　　Nationstar Mortgage LLC as servicer for Lakeview Loan Servicing, LLC services the loan on the property referenced in this motion for relief.  In the event the automatic stay in this case is modified, this case dismisses and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Lakeview Loan Servicing, LLC.

4.　　Nationstar Mortgage LLC as servicer for Lakeview Loan Servicing, LLC, directly or through an agent, has possession of the promissory note.  The promissory note is either made payable to Noteholder or has been duly indorsed in blank.  Noteholder is the original

mortgagee, or beneficiary, or the assignee of the security instrument for the referenced loan.

5.      The filing of the aforesaid Petition operated as an automatic stay under Section 362(a) of the Bankruptcy Code of proceedings by Movant to foreclose on the Mortgaged Premises.   Movant requests relief from the automatic stay to continue with the filed mortgage foreclosure action, if any, and to take the necessary action to obtain the Mortgaged Premises.

6.      Additional Respondent is the Standing Trustee appointed in this Chapter 13 proceeding.

7.      Debtors have claimed an exemption in the amount of $12,606.00 in the subject property.

8.      Pursuant to the Chapter 13 Trustee payment ledger, Debtors have failed to make the required monthly payments to the Chapter 13 Trustee which she would tender to Movant for post-petition payments.

9.      The defaults include the failure to make the following monthly payments:

| | |
|---|---|
| Payments of $977.31 from February 1, 2022 through September 1, 2022 | $7,818.48 |
| Suspense Balance | $(514.26) |
| The total amount due | $7,304.22 |

10.     The Fair Market Value of the Mortgaged Premises is $116,000.00, as per Debtor Schedules.   The approximate amount necessary to payoff the loan is $98, 390.57 good through September 6, 2022.  The breakdown of the payoff is as follows:

| | |
|---|---|
| Principal Balance | $90,286.83 |
| Accrued Interest | $4,457.20 |
| Escrow Balance | $2,776.54 |
| Corporate Advance | 190.00 |
| Suspense Balance | ($558.00) |
| Bankruptcy Fees | $1,050.00 |
| Bankruptcy Costs | $188.00 |

11.     Debtors' continual failure to make timely payments to the Trustee has resulted in a severe default of post-petition payments and lack of adequate protection to the Movant.

12.     Movant's interests are being immediately and irreparably harmed.   Movant is entitled to relief, from the automatic stay, pursuant to either 11 U.S.C. § 362 (d)(1) or (d)(2), because of the foregoing default and because:

a)      Movant lacks adequate protection for its interests in the Mortgaged Premises;

b)      Debtors has little, if any, equity in the Mortgaged Premises; and

c)      The Mortgaged Premises are not necessary to an effective reorganization or plan.

13.     Movant requests that the Court waive Rule 4001(a)(3), permitting Movant to immediately implement and enforce the Court's order.

14.     Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.


WHEREFORE, Movant respectfully moves this Court for an Order (i) granting Movant relief from the automatic stay to foreclose upon and to otherwise exercise and enforce its rights with respect to the Mortgaged Premises, (ii) awarding reasonable attorneys' fees incurred in the preparation and presentation of this motion, and (iii) granting all such other and further relief as the Court deems appropriate and necessary.


Respectfully submitted,


Dated:  10/04/2022

BY:    */s/ Christopher A. DeNardo*
Christopher A. DeNardo 78447
Lorraine Gazzara Doyle  34576
LOGS Legal Group LLP
3600 Horizon Drive, Suite 150
King of Prussia, PA 19406
(610) 278-6800
logsecf@logs.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Ryan H Karmann and<br>     Michelle L. Karmann<br>     Debtors, | BANKRUPTCY CASE NUMBER<br>19-23561 - GLT |
| Nationstar Mortgage LLC as servicer for<br>Lakeview Loan Servicing, LLC<br>     Movant.<br>v. | CHAPTER 13<br><br>11 U.S.C. § 362<br><br>Objections due by: **October 24, 2022** |
| Ryan H. Karmann and Michelle L. Karmann<br>     Debtors/Respondents, | Docket #: _____ |
| Ronda J. Winnecour, Trustee<br>     Additional Respondent. | Related to Doc # _____ |

### O R D E R

AND NOW, this _____ day of _____, 2022, at the Western District of Pennsylvania, upon the consideration of the Motion of Movant for Relief from the Automatic Stay (the "Motion"), and the failure of Debtors to file an answer, appear or otherwise respond to the Motion, and for good cause shown, it is

ORDERED AND DECREED that the Automatic Stay of all proceedings, as provided under Section 362 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Code"), 11 U.S.C. § 362, is lifted to allow Movant, or its successors, if any, to proceed with its rights under its loan documents for the property located at 107 Wylie Ave, Houston, PA 15342; and it is

FURTHER ORDERED that Rule 4001(a)(3) is not applicable and Movant, or its successors, if any, may immediately implement this order.

BY THE COURT:

_____
HONORABLE GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Ryan H Karmann and<br>      Michelle L. Karmann<br>      Debtors, | BANKRUPTCY CASE NUMBER<br>19-23561 - GLT |
| Nationstar Mortgage LLC as servicer for<br>Lakeview Loan Servicing, LLC<br>      Movant.<br>v. | CHAPTER 13<br><br>11 U.S.C. § 362 |
| | Objections due by: **October 24, 2022** |
| Ryan H. Karmann and Michelle L. Karmann<br>      Debtors/Respondents, | Docket #: _____ |
| Ronda J. Winnecour, Trustee<br>      Additional Respondent. | Related to Doc # _____ |

## **CERTIFICATE OF SERVICE**

I, Christopher A. DeNardo , an employee of the law firm of LOGS Legal Group LLP hereby certify that I caused to be served true and correct copies of the Motion for Relief and Proposed Order by First Class Mail, postage prepaid, at the respective last known address of each person set forth below on this  4th  day of October, 2022:

Ryan H. Karmann
107 Wylie Ave
Houston, PA 15342

Michelle L. Karmann
107 Wylie Ave
Houston, PA 15342

Paul W. McElrath, Jr., Esquire
McElrath Legal Holdings, LLC.
1641 Saw Mill Run Boulevard
Pittsburgh, PA 15210
ecf@mcelrathlaw.com - VIA ECF

Ronda J. Winnecour, Trustee
Suite 3250, USX Tower
600 Grant Street
Pittsburgh, PA 15219
cmecf@chapter13trusteewdpa.com - VIA ECF

United States Trustee
Sent via electronic notification ustpregion03.pi.ecf@usdoj.gov


      I HEREBY CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS
TRUE AND CORRECT.

*/s/ Christopher A. DeNardo*
Christopher A. DeNardo 78447
Lorraine Gazzara Doyle  34576
LOGS Legal Group LLP
3600 Horizon Drive, Suite 150
King of Prussia, PA 19406
(610) 278-6800
logsecf@logs.com

# NOTE

MIN: ████████████████████

Loan Number: ████████████████

FHA Case No. ████████████████

AUGUST 29, 2015                    ST. LOUIS                    MISSOURI
[Date]                              [City]                       [State]

107 WYLIE AVE, HOUSTON, PENNSYLVANIA 15342-1631
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 113,756.00        (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is JLB CORPORATION DBA GOLDEN OAK LENDING, A MISSOURI CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      4.500  %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on   NOVEMBER 1 2015        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on   OCTOBER 1, 2035        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 111 WESTPORT PLAZA, SUITE 1150, ST. LOUIS, MISSOURI 63146
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 719.68

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my

MULTISTATE FHA FIXED RATE NOTE
USFHANTE 03/30/15                    Page 1 of 4                    DocMagic *eForms*
www.docmagic.com

Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   4.000   % of the overdue amount of each payment. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

---

MULTISTATE FHA FIXED RATE NOTE
USFHANTE 03/30/15                          Page 2 of 4                    *DocMagic eForms*
www.docmagic.com

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

MULTISTATE FHA FIXED RATE NOTE
USFHANTE 03/30/15                    Page 3 of 4                    DocMagic *eFORMS*
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Ryan H Karmann_ _____ (Seal)          _____ (Seal)
RYAN H KARMANN                       -Borrower                              -Borrower

_____ (Seal)                   _____ (Seal)
                         -Borrower                                         -Borrower

_____ (Seal)                   _____ (Seal)
                         -Borrower                                         -Borrower

                                                        *[Sign Original Only]*

Loan Originator: RANDY LEE MERCHANT, NMLSR ID ██████
Loan Originator Organization: GOLDEN OAK LENDING, NMLSR ID
██████████

MULTISTATE FHA FIXED RATE NOTE
USFHANTE  03/30/15                       Page 4 of 4                    DocMagic *eForms*
                                                                       www.docmagic.com

PAY TO THE ORDER OF

WITHOUT RECOURSE
LAKEVIEW LOAN SERVICING, LLC

Donna Gross; Vice President

# ALLONGE

**Loan Number:** ▪▪▪▪▪▪▪▪

**Loan Date:**   AUGUST 29, 2015

**Borrower(s):**   RYAN H KARMANN

**Property Address:**   107 WYLIE AVE, HOUSTON, PENNSYLVANIA 15342-1631

**Principal Balance:**   $113,756.00

WITHOUT RECOURSE, PAY TO THE ORDER OF

STONEGATE MORTGAGE CORPORATION

ITS SUCCESSORS AND/OR ASSIGNS AS
THEIR INTEREST MAY APPEAR

**Company Name:** JLB CORPORATION DBA GOLDEN OAK LENDING, A MISSOURI
CORPORATION

By: _Shane Aumiller_

SHANE AUMILLER
        Typed Name

VICE PRESIDENT
        Typed Title

Pay to the Order of

LAKEVIEW LOAN SERVICING, LLC

Without Recourse
Stonegate Mortgage Corporation

By: _John A. VanDolah_
        John A. VanDolah
        Senior Vice President

MULTISTATE NOTE ALLONGE
ASTM 08/25/11

DocMagic *ERForms*
www.docmagic.com

CERTIFIED PROPERTY IDENTIFICATION NUMBERS
170-006-04-√3-000500    CHARTIERS TOWNS
ISGIS REGISTRY 09/09/2015 BY JU

DEBORAH BARDELLA
RECORDER OF DEEDS
WASHINGTON, PA
Pennsylvania

INSTRUMENT NUMBER
201525744
RECORDED ON
Sep 09, 2015
3:18:27 PM
Total Pages: 13

| RECORDING FEES | $94.00 |
| TOTAL PAID | $94.00 |
| INV: 635350 USER: TW | |

This Instrument Prepared By:
JLB CORPORATION DBA GOLDEN OAK LENDING
111 WESTPORT PLAZA, SUITE 1150
ST. LOUIS, MO 63146
(314)567-4653

After Recording Return To:
JLB CORPORATION DBA GOLDEN OAK LENDING
111 WESTPORT PLAZA, SUITE 1150
ST. LOUIS, MISSOURI 63146
Loan Number: ████████

Uniform Parcel Identifier Number:
████████

Property Address:
107 WYLIE AVE
HOUSTON, PENNSYLVANIA 15342-1631

BROKER'S SETTLEMENT SERVICES
1501 Reedsdale St., Suite 4001
Pittsburgh, PA 15233

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

FHA CASE NO.
████████

MIN: ████████                                      MERS Phone: ████████

THIS MORTGAGE ("Security Instrument") is given on  AUGUST 29, 2015
The mortgagor is RYAN H KARMANN MARRIED

("Borrower").
This Security Instrument is given to  Mortgage Electronic Registration Systems, Inc. ("MERS")
as Mortgagee.   **MERS is the nominee for Lender**, as hereinafter defined, and Lender's
successors and assigns. MERS is organized and existing under the laws of Delaware, and has a
mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E.
Voorhees Street, Suite C, Danville, IL 61834, tel. ████████
JLB CORPORATION DBA GOLDEN OAK LENDING
("Lender") is organized and existing under the laws of     MISSOURI
and has an address of  111 WESTPORT PLAZA, SUITE 1150, ST. LOUIS,
MISSOURI 63146

FHA PENNSYLVANIA MORTGAGE - MERS
PAMTGZ.FHA  03/05/15                    Page 1 of 12                    DocMagic *eFarms*
www.docmagic.com

This Instrument Prepared By:
JLB CORPORATION DBA GOLDEN OAK LENDING
111 WESTPORT PLAZA, SUITE 1150
ST. LOUIS, MO 63146
(314)567-4653

After Recording Return To:
JLB CORPORATION DBA GOLDEN OAK LENDING
111 WESTPORT PLAZA, SUITE 1150
ST. LOUIS, MISSOURI 63146
Loan Number: ███████

Uniform Parcel Identifier Number:
█████████████████

**BROKER'S SETTLEMENT SERVICES**
1501 Reedsdale St., Suite 4001
Pittsburgh, PA 15233

Property Address:
107 WYLIE AVE
HOUSTON, PENNSYLVANIA 15342-1631

───────────────── [Space Above This Line For Recording Data] ─────────────────

# MORTGAGE

FHA CASE NO.
████████████

**MIN:** ███████████    **MERS Phone** ████████

THIS MORTGAGE ("Security Instrument") is given on  AUGUST 29, 2015
The mortgagor is  RYAN H KARMANN  MARRIED

("Borrower").
This Security Instrument is given to  Mortgage Electronic Registration Systems, Inc. ("MERS")
as Mortgagee.   **MERS is the nominee for Lender**, as hereinafter defined, and Lender's
successors and assigns.  MERS is organized and existing under the laws of Delaware, and has a
mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E.
Voorhees Street, Suite C, Danville, IL 61834, tel. ████████████
JLB CORPORATION DBA GOLDEN OAK LENDING
("Lender") is organized and existing under the laws of   MISSOURI
and has an address of  111 WESTPORT PLAZA, SUITE 1150, ST. LOUIS,
MISSOURI 63146

FHA PENNSYLVANIA MORTGAGE - MERS
PAMTGZ.FHA  03/05/15                Page 1 of 12            *DocMagic eForms*
                                                            *www.docmagic.com*

Borrower owes Lender the principal sum of   ONE HUNDRED THIRTEEN THOUSAND SEVEN
HUNDRED FIFTY-SIX AND 00/100          Dollars (U.S. $ 113,756.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument
("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on  OCTOBER 1, 2035          . This Security Instrument secures to Lender: (a) the
repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note.  For this
purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for
Lender and Lender's successors and assigns) and to the successors and assigns of MERS the
following described property located in   WASHINGTON                          County,
Pennsylvania:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS
EXHIBIT "A".

which has the address of                 107 WYLIE AVE
                                              [Street]
           HOUSTON         ·      , Pennsylvania  15342-1631  ("Property Address"):
           [City]                                 [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all
easements, appurtenances,  and fixtures now or hereafter a part of the property.  All replacements
and additions shall also be covered by this Security Instrument.  All of the foregoing is referred
to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS
holds only legal title to the interests granted by Borrower in this Security Instrument; but, if
necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to,
the right to foreclose and sell the Property; and to take any action required of Lender including,
but not limited to, releasing or canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed
and has the right to mortgage, grant and convey the Property and that the Property is
unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally
the title to the Property against all claims and demands, subject to any encumbrances of record.

FHA PENNSYLVANIA MORTGAGE - MERS
PAMTGZ.FHA  03/05/15                    Page 2 of 12                    DocMagic *eF***
                                                                       www.docmagic.com

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 12 C.F.R. Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

FHA PENNSYLVANIA MORTGAGE - MERS
PAMTGZ.FHA  03/05/15                          Page 3 of 12                    *DocMagic eForms*
                                                                              www.docmagic.com

<u>THIRD,</u> to interest due under the Note;
<u>FOURTH,</u> to amortization of the principal of the Note; and
<u>FIFTH,</u> to late charges due under the Note.

**4.  Fire, Flood and Other Hazard Insurance.**   Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires.  Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary.  All insurance shall be carried with companies approved by Lender.  The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail.  Lender may make proof of loss if not made promptly by Borrower.  Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly.  All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property.  Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments.  Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5.  Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application;  Leaseholds.**   Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue  to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control.  Borrower shall notify Lender of any extenuating circumstances.  Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence.  If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

FHA PENNSYLVANIA MORTGAGE - MERS
PAMTGZ.FHA  03/05/15                                    Page 4 of 12                              *DocMagic eForms*
www.docmagic.com

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

FHA PENNSYLVANIA MORTGAGE - MERS
PAMTGZ.FHA  03/05/15                              Page 5 of 12                    *DocMagic eForms*
                                                                                *www.docmagic.com*

**(b)  Sale Without Credit Approval.**  Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c)  No Waiver.**  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d)  Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)  Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS                        from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS                        from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.    Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11.    Borrower Not Released; Forbearance by Lender Not a Waiver.**  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any

FHA PENNSYLVANIA MORTGAGE - MERS
PAMTGZ.FHA  03/05/15                                      Page 6 of 12                        *DocMagic eForms*
www.docmagic.com

demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

    **12.**    **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note:  (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

    **13.**    **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

    **14.**    **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

    **15.**    **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

    **16.**    **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

    Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

    As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents,

materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding and/or invoke any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided or referred to in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

**If the Lender's interest in this Security Instrument is held by the Secretary, and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

FHA PENNSYLVANIA MORTGAGE - MERS
PAMTGZ.FHA  03/05/15                          Page 8 of 12                    *DocMagic eForms*
                                                                              *www.docmagic.com*

**20.    Waivers.**  Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**21.    Reinstatement Period.**  Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**22.    Purchase Money Mortgage.**  If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**23.    Interest Rate After Judgment.**  Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**24.    Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider            ☐ Graduated Payment Rider
☐ Growing Equity Rider         ☐ Planned Unit Development Rider
☐ Adjustable Rate Rider        ☐ Rehabilitation Loan Rider
☐ Non-Owner Occupancy Rider    ☐ Other [Specify]

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

FHA PENNSYLVANIA MORTGAGE - MERS
PAMTGZ.FHA  03/05/15                          Page 9 of 12                    *DocMagic eForms*
                                                                             www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 12 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
RYAN  H  KARMANN          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

Witness:                         Witness:

_____          _____

———————————————— [Space Below This Line For Acknowledgment] ————————————————

State of   PENNSYLVANIA

County of   WASHINGTON

On this the _29_ day of _August 2015_, before me, _Lori Hunter_ ,

the undersigned officer, personally appeared   RYAN H KARMANN

known to me (or satisfactorily proven) to be the person whose name _is_

subscribed to the within instrument and acknowledged that _he_

executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

_Notary Public_
Title of Officer

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Lori Hunter. Notary Public
Robinson Twp.. Allegheny County
My Commission Expires May 29. 2019
MEMBER. PENNSYLVANIA ASSOCIATION OF NOTARIES

(Seal)

Loan Originator: RANDY LEE MERCHANT, NMLSR ID ███
Loan Originator Organization: GOLDEN OAK LENDING, NMLSR ID ███
FHA PENNSYLVANIA MORTGAGE - MERS
PAMTGZ.FHA  03/05/15                    Page 11 of 12                    DocMagic eForms
www.docmagic.com

**Certificate of Residence of Mortgagee**

The undersigned hereby certifies that: (i) he/she is the Mortgagee or the duly authorized attorney or agent of the Mortgagee named in the within instrument; and (ii) Mortgagee's precise residence is: 1901 E Voorhees Street, Suite C, Danville, IL 61834

Witness my hand this ___29th___ day of ___August, 2015___.

_____
Signature of Mortgagee or
Mortgagee's Duly Authorized Attorney or Agent

___Tamela Moore___
Type or Print Name of Mortgagee or
Mortgagee's Duly Authorized Attorney or Agent

FHA PENNSYLVANIA MORTGAGE - MERS
PAMTGZ.FHA  03/05/15                          Page 12 of 12                          DocMagic eForms
                                                                                     www.docmagic.com

## EXHIBIT A

PARCEL I:

ALL THAT CERTAIN LOT OR PIECE OF GROUND SITUATE IN CHARTIERS
TOWNSHIP, WASHINGTON COUNTY, PENNSYLVANIA, KNOWN AND DESIGNATED
AS LOT NO. 72 IN THE HARRY L. MCNARY PLAN OF LOTS (WHICH PLAN IS OF
RECORD IN PLAN BOOK 4 PAGE 68), SAID LOT BEING MORE PARTICULARLY
BOUNDED AND DESCRIBED AS FOLLOWS, TO-WIT:

BEGINNING AT A POINT COMMON TO THE NORTHERLY BOUNDARY LINE OF
CHERRY AVENUE, THE WESTERN BOUNDARY LINE OF WYLIE AVENUE, AND THE
LOT HEREIN DESCRIBED, THENCE NORTH 51 DEGREES  45' EAST 135 FEET TO
ALLEY G; THENCE NORTH 38 DEGREES  15' WEST 45 FEET TO LOT NO. 71 IN
SAID PLAN; THENCE SOUTH 51' 45' WEST 135 FEET TO CHERRY AVENUE; AND
THENCE SOUTH 38 DEGREES  15' EAST 45 FEET TO THE POINT OF BEGINNING.

UNDER AND SUBJECT TO THE SAME EXCEPTIONS, RESERVATIONS, RIGHTS OF
WAY, COVENANTS AND CONDITIONS AS APPEAR IN THE RECORD CHAIN OF
TITLE.

PARCEL II:

ALL THAT CERTAIN LOT OR PIECE OF GROUND SITUATE IN CHARTIERS
TOWNSHIP, WASHINGTON COUNTY, PENNSYLVANIA, DESCRIBED MORE FULLY
AS FOLLOWS:

BEING LOT NO. 71 IN THE MCNARY PLAN AS RECORDED IN DEED BOOK
VOLUME 1245 PAGE 453 AND DEED BOOK VOLUME 931 PAGE 28.

UNDER AND SUBJECT TO THE SAME EXCEPTIONS, RESERVATIONS AND
CONDITIONS SET FORTH OR MENTIONED IN THE CHAIN OF TITLE.


TAX PARCEL ID: ███████████████
ADDRESS: 107 WYLIE AVENUE
        HOUSTON, PA  15342

McCabe Weisberg & Conway, LLC
Suite 1400
123 South Broad Street
Philadelphia, PA 19109

Record and Return To:
McCabe Weisberg & Conway, LLC
Suite 1400
123 South Broad Street
Philadelphia, PA 19109
Attn: James Gairo

<u>**Assignment of Mortgage**</u>

MIN #█████████████

MERS Phone #████████████

    For good and valuable consideration received, the undersigned holder of a mortgage, **Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for JLB Corporation DBA Golden Oak Lending, its successors and assigns**, whose address is 1901 E. Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, Michigan 48501-2026, hereby grants, assigns, transfers and conveys without warranties and without recourse, unto **Lakeview Loan Servicing, LLC**, whose address is 4425 Ponce De Leon Blvd, MS5-251, Coral Gables, FL 33146, the mortgage dated August 29, 2015, executed by Ryan H. Karmann, married securing the principal of $113,756.00, recorded on September 9, 2015, as Instrument Number: 201525744 in the Office of the Recorder of Deeds for Washington County, Commonwealth of Pennsylvania, along with all rights accrued or to accrue under said Mortgage.

    The property encumbered by the Mortgage is located in Washington County, Commonwealth of Pennsylvania, known as and located at 107 Wylie Avenue, Houston, PA 15342, as described in the following legal description:

SEE ATTACHED LEGAL DESCRIPTION

Parcel No.████████████████████

Assignee certifies that the precise address of Lakeview Loan Servicing, LLC, is 4425 Ponce De Leon Blvd, MS5-251, Coral Gables, FL 33146.

Attested by: _Ashley N. Rouse_

Name/Position: **ASHLEY N. ROUSE** ASSISTANT SECRETARY

TO HAVE AND TO HOLD, Assignee, its successors and assigns, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on

_Nov     19_ , _2019_ .

Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for JLB Corporation DBA Golden Oak Lending, its successors and assigns

Signature: _Linda Brown_

Name: _LINDA BROWN_

Title: **ASSISTANT SECRETARY**

Date: _11-19-19_

## FORM OF CORPORATE ACKNOWLEDGMENT

State of Virginia

) SS:

City of Virginia Beach

On this _19th_ day of _NovembeR_ , 20_19_ before me the undersigned officer, personally appeared _LINDA BROWN_ who acknowledged himself or herself to be the **ASSISTANT SECRETARY** of Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for JLB Corporation DBA Golden Oak Lending, its successors and assigns, and that he or she as such **ASSISTANT SECRETARY** , being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself or herself as **ASSISTANT SECRETARY**

In witness whereof, I here unto set my hand and official seal.

_Jacqueline VanDerMiller_

NOTARY PUBLIC

**Jacqueline VanDerMiller**

Jacqueline VanDerMiller
NOTARY PUBLIC
REG. ▇▇▇▇
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES JULY 31, 2023

## LEGAL DESCRIPTION

## EXHIBIT A

**PARCEL I:**

ALL THAT CERTAIN LOT OR PIECE OF GROUND SITUATE IN CHARTIERS TOWNSHIP, WASHINGTON COUNTY, PENNSYLVANIA, KNOWN AND DESIGNATED AS LOT NO. 72 IN THE HARRY L. MCNARY PLAN OF LOTS (WHICH PLAN IS OF RECORD IN PLAN BOOK 4 PAGE 68), SAID LOT BEING MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS, TO-WIT:

BEGINNING AT A POINT COMMON TO THE NORTHERLY BOUNDARY LINE OF CHERRY AVENUE, THE WESTERN BOUNDARY LINE OF WYLIE AVENUE, AND THE LOT HEREIN DESCRIBED, THENCE NORTH 51 DEGREES  45' EAST 135 FEET TO ALLEY G; THENCE NORTH 38 DEGREES  15' WEST 45 FEET TO LOT NO. 71 IN SAID PLAN; THENCE SOUTH 51' 45' WEST 135 FEET TO CHERRY AVENUE; AND THENCE SOUTH 38 DEGREES  15' EAST 45 FEET TO THE POINT OF BEGINNING.

UNDER AND SUBJECT TO THE SAME EXCEPTIONS, RESERVATIONS, RIGHTS OF WAY, COVENANTS AND CONDITIONS AS APPEAR IN THE RECORD CHAIN OF TITLE.

**PARCEL II:**

ALL THAT CERTAIN LOT OR PIECE OF GROUND SITUATE IN CHARTIERS TOWNSHIP, WASHINGTON COUNTY, PENNSYLVANIA, DESCRIBED MORE FULLY AS FOLLOWS:

BEING LOT NO. 71 IN THE MCNARY PLAN AS RECORDED IN DEED BOOK VOLUME 1245 PAGE 453 AND DEED BOOK VOLUME 931 PAGE 28.

UNDER AND SUBJECT TO THE SAME EXCEPTIONS, RESERVATIONS AND CONDITIONS SET FORTH OR MENTIONED IN THE CHAIN OF TITLE.

TAX PARCEL ID: ███████████
ADDRESS: 107 WYLIE AVENUE
            HOUSTON, PA  15342

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Ryan H. Karmann** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | **Michelle L. Karmann** |
| (Spouse, if filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number | **19-23561** |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                                            12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

☑ Yes. Where is the property?

---

**1.1**

**107 Wylie Avenue**
Street address, if available, or other description

**Houston**          **PA**    **15342-0000**
City                State      ZIP Code

**Washington**
County

**What is the property?** Check all that apply

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Residence**
**Fair Market Value Determined By Comparable Sales**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$116,000.00** | **$116,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ **Check if this is community property** (see instructions)

---